

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>JOSE A. COSIO,<br><br>　　　　Debtor. | Chapter 7<br><br>Case No. 2:05-bk-41326-TD<br>Adv. No. 2:06-ap-01487-TD<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER TRIAL |
| JOSE A. COSIO,<br>　　　　Plaintiff,<br>vs.<br>UNITED STATES OF AMERICA (etc.);<br>EDUCATIONAL CREDIT MANAGEMENT CORPORATION,<br>　　　　Defendants. | Date:　　October 10, 2007<br>Time:　　1:30 p.m.<br>Courtroom: 1345 |

**NATURE OF PROCEEDINGS**

The Debtor and Plaintiff, Jose A. Cosio ("Plaintiff"), filed a voluntary Chapter 7 Petition on October 14, 2005. Plaintiff was granted a discharge on June 16, 2006. Thereafter, on July 6, 2006, Plaintiff filed a First Amended Complaint For Declaratory Relief And To Determine Debt Dischargeable Pursuant To (1) 11 U.S.C. Section 523(a)(8); (2) Health Education Assistance Loan Program, 42 U.S.C. Section 292f(g)(2); (3) 11 U.S.C. 105 (the "Complaint"), later amended to substitute Educational Credit Management Corporation ("ECMC") as a defendant, seeking to discharge his educational student loans. A non-jury trial was held on October 10, 2007.

The Court, having considered the record before it, including the evidence received at trial, the statements and arguments of counsel, and the contents of the trial briefs, files the following Findings of Fact and Conclusions of Law.

**FINDINGS OF FACT**

1. On or about January 25, 1984, Plaintiff executed a Wisconsin Guaranteed Student Loan Program Promissory Note (the "First Note"). (Stipulation of Admitted Facts and Exhibits for Trial ("SAF"), Admitted Fact ("AF") No. 1)

2. On or about November 1, 1984, there was a $5,000 disbursement made pursuant to the First Note for Plaintiff's benefit. (SAF, AF No. 2)

3. On or about August 30, 1983, Plaintiff executed a Wisconsin Guaranteed Student Loan Program Promissory Note (the "Second Note"). (SAF, AF No. 3)

4. On or about September 13, 1983, there was a $5,000 disbursement made pursuant to the Second Note for Plaintiff's benefit. (SAF, AF No. 4)

5. On or about September 30, 1982, Plaintiff executed a Wisconsin Guaranteed Student Loan Program Promissory Note (the "Third Note"). (SAF, AF No. 5)

6. On or about October 25, 1982, there was a $5,000 disbursement made pursuant to the Third Note for Plaintiff's benefit. (SAF, AF No. 6)

7. On or about August 20, 1981, Plaintiff executed a Wisconsin Guaranteed Student Loan Program Promissory Note (the "Fourth Note"). (SAF, AF No. 7)

8. On or about October 16, 1981, there was a $5,000 disbursement made pursuant to the Fourth Note for Plaintiff's benefit. (SAF, AF No. 8)

9. Great Lakes Higher Education Corp. f/k/a Wisconsin Higher Education Corp. obtained a judgment against Plaintiff for the amounts due under First Note, Second Note, Third Note and Fourth Note from the Circuit Court, Branch 12, Dane County, State of Wisconsin, on or about September 6, 1989 (the "Judgment"). (SAF, AF No. 9)

10. The Judgment accrues interest at the rate of 12.00% per annum pursuant to the laws of the State of Wisconsin. (SAF, AF No. 10)

11. ECMC is the current holder of the Judgment. (SAF, AF No. 11)

12. On or about October 25, 1980, Plaintiff executed a California Guaranteed Student Loan Program Student Aid Commission Promissory Note and Disclosure Statement (the "Fifth Note"). (SAF, AF No. 12)

13. On or about November 30, 1980, there was a $2,500 disbursement made pursuant to the Fifth Note for Plaintiff's benefit. (SAF, AF No. 13)

14. The interest rate on the Fifth Note is a fixed rate currently set at 7% per annum. (SAF, AF No. 14)

15. ECMC is the current holder of the Fifth Note. (SAF, AF No. 15)

16. The First, Second, Third, Fourth and Fifth Notes (collectively "the Notes") represent student loans made, insured or guaranteed by a governmental unit, or made to Plaintiff under a program funded in whole or in part by a governmental unit or nonprofit institution within the meaning of 11 U.S.C. § 523(a)(8). (SAF, AF No. 16)

17. Plaintiff filed a voluntary Chapter 7 petition on or about October 14, 2005 (the "Petition Date"). (SAF, AF No. 17)

18. Plaintiff's four student loans represented by the First Note, Second Note, Third Note and Fourth Note were previously held by the Department of Education, and because of this Plaintiff and ECMC entered into a Stipulation to Substitute ECMC as real party in interest on behalf of the Department of Education (the "Stipulation to Substitute"). The Court entered an Order approving the Stipulation to Substitute resulting in ECMC becoming a defendant in the adversary case. (SAF, AF No. 19)

19. Plaintiff has additional student loans known as HEAL Loans, which loans were a part of this adversary case and were defended by the United States of America through the United States Attorneys Office. Plaintiff and the United States of America entered into a Stipulation resolving those loans (SAF, AF No. 20) by a Stipulation providing that Plaintiff is to make monthly payments of $567.20 for 20 years to repay a his HEAL Loans. (Plaintiff's trial testimony)

20. Plaintiff received his Chapter 7 discharge on June 16, 2006. (SAF, AF No. 21)

21. The only remaining defendant in the adversary case is ECMC. (SAF, AF No. 22)

22. On or about August 30, 2006, ECMC filed and served its Answer to Plaintiff's

3

1  Complaint. (SAF, AF No. 23)

2  23. Although Plaintiff, as part of this lawsuit, made an agreement to repay his HEAL loans, Plaintiff has not applied to the U.S. Department of Education for a William D. Ford Direct Consolidation Loan. (SAF, AF No. 24) Defendant believes Plaintiff's ECMC balance is about $82,323.44 as of March 11, 2007.

6  24. Plaintiff has not established the balance owing on his student loans owed to ECMC. (Plaintiff's trial testimony)

8  25. Plaintiff is 49 years old. (SAF, AF No. 26)

9  26. Plaintiff received a Bachelors of Science in Biology from the University of San Francisco in 1981. (SAF, AF No. 27)

11  27. Plaintiff received a Masters in Public Health from UCLA in 2004. (SAF, AF No. 28)

12  28. Plaintiff has worked steadily for Kaiser Permanente Health Plan from September 23, 2002, to the present as a Medicare Compliance Administrative Specialist. (SAF, AF No. 29)

14  29. Plaintiff does not have any dependents. (SAF, AF No. 30)

15  30. Plaintiff receives medical, dental, and vision insurance through employer-sponsored programs. (SAF, AF No. 31)

17  31. Plaintiff has life insurance. (SAF, AF No. 32)

18  32. Plaintiff has disability insurance. (SAF, AF No. 33)

19  33. Plaintiff does not suffer from any physical disabilities. (SAF, AF No. 34)

20  34. Plaintiff does not suffer from any mental disabilities. (SAF, AF No. 35)

21  35. From each of Plaintiff's bi-weekly paychecks Plaintiff makes a pre-tax contribution of $86.94 to his TSA Employee retirement plan, the name and the terms of which were not discussed in the testimony. I infer that this is a voluntary contribution because the testimony did not suggest otherwise.

25  36. Plaintiff's testimony was somewhat vague regarding his payroll deductions. Thus, from each of Plaintiff's bi-weekly paychecks he testified there are three post-tax deductions made for repayment of loans Plaintiff took from his retirement plans. Those three deductions total $215.00 every two weeks. (Plaintiff's trial testimony)

37. From each of Plaintiff's bi-weekly paychecks Plaintiff makes a post-tax contribution of $289.81 to a retirement plan. (Plaintiff's trial testimony)

38. In all, Plaintiff's voluntary pre-tax and post-tax deductions for loan repayment and retirement contributions from his paychecks total $1,183.70 every four weeks, and on a monthly basis they total $1,282.34. (Plaintiff's trial testimony)

39. Plaintiff's Schedule J to his Bankruptcy Petition details his monthly expenses and concludes that Plaintiff's total monthly expenses were $2,283 as of October 27, 2005. (ECMC's Exhibit G)

40. Plaintiff's Responses to Interrogatories state that Plaintiff's total monthly expenses were $2,520.00 as of December 7, 2006. (Plaintiff's trial testimony)

41. Plaintiff states that his monthly expenses as of the time of trial total $2,910. (Plaintiff's trial testimony)

42. Plaintiff's current annual gross income is about $77,000. (Plaintiff's trial testimony)

43. ECMC offered Plaintiff a repayment plan of $450 a month until his loan balance is paid in full or 20 years, whatever occurs first, but Plaintiff has not responded with any effort to explore the possibility of ECMC loan repayment. (SAF, AF No. 25)

44. Plaintiff also may be eligible for payment under the Income Contingent Repayment Plan of the William D. Ford Federal Direct Loan Program (the "Ford Program") based upon his estimated 2007 Adjusted Gross Income of $77,000, and taking into account his agreement to repay his HEAL Loans and a balance of about $82,000 on his ECMC loans.

45. Plaintiff's might qualify for the Graduated Repayment Plan of the Ford Program based upon his estimated 2007 Adjusted Gross Income of $77,000 and a balance of about $82,000 on his ECMC loans. (Request For Judicial Notice, Exhibit 2).

46. Plaintiff's might be eligible for the Graduated and Extended Repayment Plans of the Ford Program based upon his estimated 2007 Adjusted Gross Income of $77,000 and a balance of about $82,000.00 on his ECMC loans.

47. Although the record contains scattered testimony concerning previous repayment efforts by Plaintiff, his testimony in this regard was vague and largely based on hearsay or uncorroborated

5

assertions and reflects no effort on Plaintiff's part regarding any Ford Program repayment options.

48. Any conclusion of law deemed to constitute a finding of fact is incorporated herein as a finding of fact.

**CONCLUSIONS OF LAW**

1. This court has jurisdiction over this proceeding under 28 U.S.C. § 157(a) and General Order No. 266, filed October 9, 1984. This adversary action is a core proceeding under 28 U.S.C. § 157(2)(I).

2. Venue for this proceeding lies within the Central District of California pursuant to 28 U.S.C. § 1409, as Plaintiff's Chapter 7 case was filed within the Central District of California.

3. Student loans are presumptively nondischargeable in bankruptcy under 11 U.S.C. §523(a)(8). Tennessee Student Assistance Corp. v. Hood, 541 U.S. 440, 124 S. Ct. 1905 (2004). Section 523(a)(8) excepts from discharge any debt "for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend; *unless* excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents."[1] (Emphasis added.)

4. In In Re Pena, 115 F.3d 1108, 1112 (9th Cir. 1998), the Ninth Circuit adopted the test set forth in In Re Brunner, 831 F.2d 395 (2nd Cir. 1987) to determine whether a student loan should be excepted from discharge as an undue hardship. Under that test, the debtor bears the burden of proving:

1)  That he or she cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;
2)  That additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
3)  That the debtor has made good faith efforts to repay the loans.

In re Pena, 155 F. 3d at 1111.

---

[1] This is the pre-BAPCPA version of §523(a)(8) that was in effect at the time Plaintiff filed his Chapter 7 petition.

6

5. The Ninth Circuit Court of Appeals noted that "neither Congress nor this court has defined the term 'undue hardship' .... However, the existence of the adjective 'undue' indicates that Congress viewed garden-variety hardship as insufficient excuse for a discharge of student loans ...." In re Pena, 155 F.3d at 1111. (Citations omitted).

6. "Current financial adversity, characteristic of all debtors in bankruptcy court, is not a determinative factor in establishing dischargeability." In re Barrows, 182 B.R. 640, 648-49 (Bankr. D. N.H. 1994). "The mere fact that repayment of the student loan may impose a hardship on the debtor is not enough to permit dischargeability." In re Holmes, 205 B.R. 336, 339 (Bankr. M.D. Fla. 1997). The bottom line is that "Congress has seen fit to erect a high hurdle to debtors seeking to discharge student loan obligations. While it commits to the court's discretion the finding of 'undue hardship,' that discretion has been circumscribed by case law which, in an attempt to give structure to the Congressional enactment, reserves discharge for the extraordinary case." In re Wegrzyniak, 241 B.R. 689, 696 (Bankr. D. Id. 1999).

7. The debtor has the burden to satisfy all three of the elements of the Brunner test before a student loan can be discharged. In re Faish, 72 F. 3d 298, 306 (3d Cir. 1995). If the debtor fails to meet one of the requirements, the bankruptcy court's inquiry must end there, with a finding of no dischargeability.

8. The first prong of the Brunner test requires more than a showing of tight finances. In re Faish, 72 F. 3d at 306. As stated by the Ninth Circuit Bankruptcy Appellate Panel in In re Birrane, 287 B.R. 490, 495 (9th Cir. BAP 2002), "[t]he first prong of the Brunner test requires an examination of Birrane's current income and expenses to see if payments of the loan would cause her standard of living to fall below that minimally necessary."

9. According to the Courts in Birrane and in In re Nascimento 241 B.R. 440, 445 (9th Cir. BAP 1999), the proper inquiry is "whether it would be 'unconscionable' to require the debtor to take any available steps to earn more income or to reduce his expenses."

10. Plaintiff testified concerning Plaintiff's monthly expenses, and in general, the expenses he lists appear to be reasonable, with some unexplained exceptions.

11. Plaintiff fails to provide any explanation to support his statement that he incurs $100 in

7

monthly out-of-town non-reimbursable employment expenses and $65 monthly for tax preparer fees. In addition, he claims a $75 church contribution.

12. Based on Plaintiff's direct testimony, he contributes $504.11, bi-weekly, to his 401(k). This total includes "Other payroll deductions/401(k) contributions" in the amount of $149.98 and "Other payroll deductions/401(k) loan repayment" in the amount of $354.83. (Dec. of Jose A. Cosio as Direct Testimony, p.18)

13. In addition, I note that Plaintiff is paying off several personal loans in preference to his loans held by ECMC, including his HEAL loan and UCLA loan, all apparently in preference to his loans held by ECMC.

14. I conclude there is a reasonable possibility that Plaintiff could, with some adjustment of other voluntary payments, maintain a minimal standard of living and repay his student loans owed to ECMC, either pursuant to the repayment plan offered by ECMC or a repayment plan offered by the William D. Ford Federal Direct Loan Program.

15. It would not be "unconscionable" to expect the Plaintiff to lower these voluntary expenses. Moreover, Plaintiff's $250 per month dental payment is a short term obligation and will end shortly, perhaps before 2008.

16. In order to satisfy the second prong of the Brunner "undue hardship" test, the debtor must show that his present inability to pay will likely persist throughout a substantial portion of the loan repayment period. Proof of "undue hardship" does not require proof of an "exceptional circumstance beyond an inability to pay," now or in the future. In re Nys, 446 F.3d 938, 941 (9th Cir. 2006).

17. The second prong "is intended to effect the 'clear congressional intent exhibited in section 523 (a) (8) to make the discharge of student loans more difficult than that of other nonexcepted debt.' " In re Birrane, 287 B.R. at 497, quoting In re Rifino, 245 F.3d 1083 (9th Cir. 2001).

18. Plaintiff has not satisfied his burden of proof under the second prong of the Brunner test. Plaintiff has not established that he has barriers of the type necessary to meet the second prong of the Brunner test. Rather, the evidence persuades me that Plaintiff's income has stabilized and improved over a long period of time and is likely to improve in the future, however modestly. Thus, Plaintiff

8

has not proven that he suffers an inability to pay which will likely persist throughout a substantial portion of the loan repayment period.

19. In fact, the evidence does not show that Plaintiff has an inability to pay now or in the future. Plaintiff's trial testimony shows that Plaintiff's income has increased every year since 2001. He testified to having a fairly stable source of income since 1998. He has maintained steady employment with Kaiser since 2002. There is no evidence that the debtor is hindered by any barrier that would lead the court to believe he will lack the ability to repay for several years. In re Birrane, 287 B.R. at 497. Plaintiff seems to be a healthy, wholesome, reliable employee with good prospects for his future employment at similar compensation.

20. Under the third prong of the Brunner test, Plaintiff must establish that he has made good faith efforts to repay his student loans.

21. Lack of bad faith is not the applicable test. Plaintiff's burden is to show good faith efforts to repay requiring efforts to satisfy the debt by all means, or at least by some means, within Plaintiff's reasonable control. In re Ulm, 304 B.R. 915, 922 (S.D. Ga 2004).

22. There are two measures of good faith. The Birrane court, 287 B.R. at 499, describes the first measure as follows: "Good faith is measured by the debtor's efforts to obtain employment, maximize income, and minimize expenses."

23. While Plaintiff has accounted for generally modest living expenses, on balance I conclude that Plaintiff has not made adequate efforts to adjust his voluntary expenditures to provide for consistent efforts to repay his ECMC loans along with other obligations.

24. Plaintiff's claimed monthly expenses have increased over $600 since the time of filing his bankruptcy petition. His monthly tax preparer expense of $65 and his church contribution of $75 may not be entirely appropriate in light of his student loan debt. Plaintiff's monthly dental expense of $250 specifically set aside for 2007 will terminate within one year, maybe before 2008.

25. Plaintiff's voluntary pre-tax and post-tax deductions from his paycheck totaling $1,282.34 a month are not entirely appropriate either, under the circumstances.

26. Plaintiff's repayment of loans taken from his retirement plans to repay some but not all of his student loans falls somewhat short of proving Plaintiff's good faith here.

9

27. The entering into a settlement to repay a portion of Plaintiff's HEAL loans amounts to a preferential plan on Plaintiff's part as to which loans should be repaid and which loans do not need to be repaid. The 523(a)(8) case law does not support Plaintiff's selective repayment approach.

28. The second measure of good faith, as stated by the Birrane court is the debtor's effort, or lack thereof, to negotiate a repayment plan with ECMC. The Ninth Circuit's decision in In re Nys, 446 F.3d 938 (9th Cir. 2006) and the Ninth Circuit BAP's decision in Birrane bring the Ninth Circuit in line with other jurisdictions across the country which are increasingly requiring debtors to explore the Ford Program before obtaining an undue hardship discharge. The Birrane court found the debtor showed a lack of good faith by failing to take reasonable steps towards exploring and renegotiating a repayment schedule under the Income Contingent Repayment Plan. There are available repayment alternatives for Plaintiff's ECMC loans under an Income Contingent Repayment Plan (the William D. Ford Federal Direct Loan Program) that Plaintiff has ignored. (See, SAF, AF No. 24)

29. ECMC offered Plaintiff a repayment plan of $450 per month until his loan balance is paid in full or 20 years, whatever occurs first. (SAF, AF No. 25)

30. ECMC has offered other repayment alternatives for Plaintiff's ECMC loans.

31. Since the Plaintiff has not demonstrated that he has made a meaningful effort to pursue any repayment alternative with respect to his ECMC loans, he fails the third prong of the Brunner test: Plaintiff has not demonstrated a good faith attempt to repay these student loans, his past somewhat vaguely described efforts nothwithstanding.

32. Plaintiff's evidence does not prove that his circumstances are unique, extraordinary, or that they support a finding of undue hardship. Plaintiff's unwillingness to repay his ECMC loans precludes Plaintiff on the record before me, from proving good faith as contemplated by Brunner and the other case law discussed.

33. Plaintiff has failed to prove (a) that he cannot maintain, based upon current income and expenses, a minimal standard of living for himself, if forced to repay the ECMC loans; (b) that there are additional circumstances to support the discharge of his ECMC loans, or (c) that he has made a good faith effort to repay his ECMC loans. Plaintiff has not satisfied any of the 3 requirements of the Brunner test necessary to establish that his student loans should be discharged

10

1 based on undue hardship. Therefore, judgment should be entered in favor of ECMC on Plaintiff's
2 Complaint.

3    34. Pursuant to the ruling in In re Saxman, 325 F.3d 1168 (9th Cir. 2003), without a finding of
4 undue hardship, the Court cannot grant a partial discharge.

5    35. ECMC is entitled to a judgment reciting that Plaintiff's indebtedness to ECMC is
6 nondischargeable under 11 U.S.C. § 523(a)(8).

7    36. Any finding of fact deemed to constitute a conclusion of law is incorporated herein as a
8 conclusion of law.

Dated: 11/20/07

_____
Thomas B. Donovan
United States Bankruptcy Judge

NOTICE OF ENTRY OF JUDGMENT OR ORDER
AND CERTIFICATE OF MAILING

TO ALL PARTIES IN INTEREST LISTED BELOW:

1.   You are hereby notified that a judgment or order entitled:

FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER TRIAL

was entered on **NOV 26 2007**.

2.   I hereby certify that I mailed a true copy of the order or judgment to the persons and entities listed below on **NOV 26 2007**.

Debtor/Plaintiff
Jose A. Cosio
330 E. Cordova Street, Apt. 169
Pasadena, CA 91101

Attorney for Plaintiff
Silvio Nardoni
535 N. Brand Blvd., Ste. 501
Glendale, CA 91203

Attorney for Defendant
Scott A. Schiff
Soukup & Schiff, LLP
1880 Century Park East, Ste. 1108
Los Angeles, CA 90067-1600

United States Trustee
Ernst & Young Plaza
725 S. Figueroa St., 26th Floor
Los Angeles, CA 90017

/s/ Sonny Milano